UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HINDS, on behalf of themselves and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMUNITY MEDICAL CENTERS, INC.,<br><br>        Defendant. | No.  2:22-cv-01207-JAM-AC<br><br>**ORDER DENYING MOTION FOR SUBSITUTION AND GRANTING MOTION FOR REMAND** |

On November 11, 2021, David Hinds ("Plaintiff" or "Mr. Hinds") filed suit against Community Medical Centers, Inc. ("CMC") in San Joaquin Superior Court based on various state laws alleging CMC failed to protect his Protected Health Information ("PHI") and Personally Identifiable Information ("PII"). Thereafter four more cases alleging the same violations were filed against CMC and the San Joaquin Superior Court consolidated them into this class action. CMC then removed and filed its motion to substitute the United States as this suit's defendant. See Notice of Removal ("NOR"); ECF No. 1; see also Mot. to

1

Substitute ("Mot."), ECF No. 9.  The United States and Plaintiff filed their respective oppositions and CMC replied.  See US Opp'n, ECF No. 3; Pl.'s Opp'n, ECF No. 29; Reply to US Opp'n, ECF No. 35, Reply to Pl.'s Opp'n, ECF No. 34.  In addition, the United States and Plaintiff filed motions to remand.  See US Mot. to Remand ("US MTR"), ECF No. 27; Pl.'s Mot. to Remand ("Pl.'s MTR"), ECF No. 24.  CMC filed oppositions to both, and the United States and Plaintiff filed replies.  See Def.'s Opp'n to US MTR, ECF No. 32; Def's Opp'n to Pl.'s MTR, ECF No. 33; US Reply to Def's Opp'n to US MTR, ECF No. 36; Pl.'s Reply to Def's Opp'n to Pl.'s MTR, ECF No. 37.[1]

### I.  BACKGROUND

#### A.  Statutory Framework

CMC is a healthcare provider that operates over 25 facilities in California.  Mot. at 2.  To offset its operation costs associated with malpractice liability, CMC applied for and received federal grant funding pursuant to the to The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), See Pub. L. No. 104-73, 109 Stat. 777 (1995) in 2021 and 2022; see also Mot. at 2.  As a recipient of this funding, the Secretary of Health and Human Services (HHS) deemed CMC an employee of the United States Public Health Service ("PHS") "for the purposes of" 42 U.S.C. § 233.  See § 233(g)(1)(A); see also Mot. at 1, 4.  Under 42 U.S.C. § 233, the Federal Tort Claims Act ("FTCA") is the only remedy for certain medical-malpractice suits against PHS

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for September 27, 2022.

employees. § 233(a). However, the FTCA's applicability is not automatic. Instead, the United States Attorneys—in accordance with Attorney General's delegation of such duties—evaluate when a lawsuit's alleged actions or omission triggers the FTCA's coverage. § 233(b)-(*l*). If a healthcare provider—like CMC—is sued in state court, FSHCAA provides two avenues for the case's removal to federal court: (1) the Attorney General can remove the case after certifying the defendant is a deemed PHS employee whose actions or omissions fall within the FTCA's purview; or (2) the healthcare provider can remove the case on its own if the Attorney General fails to appear within fifteen days of receiving notice of the case. See §§ 233(c), (*l*)(1)-(2).

B.  CMC's Data Breach and Subsequent Class Action

After CMC applied and received FSHCAA funding in 2021 and 2022, CMC learned of an "external system breach" compromising its patients PHI and PII in October 2021. See Consolidated Class Action Compl. ("CCAC") ¶¶ 6 at 16, Exh. B to NOR, ECF No. 1-2.[2] After CMC notified its patients of the breach, Daniel Hinds filed suit against CMC in San Joaquin Superior Court based on various state laws. Id. ¶ 11; See State Ct. Docket ("Docket") at 2, Exh. B to NOR, ECF No. 1-2. Thereafter four more cases were filed—Beck, Donaire, Palermo, and Miranda—due to the same breach. See Mot. at 3. CMC forwarded each complaint to HHS, seeking its representation in all instances. See NOR ¶ 6. In January 2022, HHS's counsel denied CMC's request because CMC and its staff are

---

[2] Exhibit B to the NOR is the state court docket and is 417 pages. As a result, citation to this exhibit use the CM/ECF page numbers.

3

"deemed to be employees of the [PHS] *solely in medical malpractice cases*" and the complaints' allegations do "not fall under the auspice of the FSCHAA and FTCA." See Letters from Dep't of Health & Hum. Serv., Exh. C to NOR, ECF No. 1-3.

Later that month, the state court consolidated the abovementioned cases into the Hinds case, and the parties entered a stipulated case management order requiring Plaintiffs to file and serve a consolidated complaint by June 8, 2022. See Stipulation Case Mgmt. Order No. 1 at 328, Exh. B to NOR, ECF No. 1-2. Plaintiff filed and served Defendant the Consolidated Class Action Complaint ("CCAC") on June 9, 2022. See Docket at 4. On June 13, 2022, CMS sent HHS and the United States Attorney for the Eastern District of California ("United States Attorney") the CCAC and letter seeking "removal of the consolidated class action to federal district court and substitution of the United States as the proper defendant in the places of CMC." See CMC Letter to HSS and US Attorney, Exh. 1 to US Opp'n, ECF No. 27-3. In accordance with § 233(*l*)(1), the United States Attorney appeared in court on June 22, 2022 and explained he was determining whether § 233's protection shielded CMC from Plaintiff's allegations. See Mot. at 4; see also US Opp'n at 4.

On July 7, 2022, CMC asked the United States Attorney if he would consent to CMC removing the case to federal court and substitution of the United States in CMC's place. See Decl. of Joseph Frueh ¶ 3, ECF No. 27-2. The United States Attorney advised he was still evaluating the matter and "would oppose any unilateral removal or attempt to compel the United States to substitute as the defendant in lieu of CMC." Id. One day later,

4

1  CMC removed the action to federal court.  See NOR; see also Mot.
2  at 4, US Opp'n at 4.  On August 5, 2022, the United States
3  Attorney sent CMC a letter denying its request because the
4  "available information" indicated the claims against CMC were not
5  "for damage for personal injury, including death, resulting from
6  the performance of medical, surgical, dental or related
7  functions." See US Attorney Letter to CMC, Exh 2. to US Opp'n,
8  ECF No. 27-4.

## II.   OPINION

### A.   Analysis

#### 1.   CMC's Motion for Substitution

The parties dispute whether § 233 entitles CMC to absolute immunity and the United States' substitution in this suit.  CMC argues these safeguards are applicable because: (1) § 233 immunizes PHS employees from claims stemming from "the performance of medical or related functions within the scope of their employment," see Mot. at 6 (citation omitted); (2) CMC was deemed a PHS employee during the data breach's occurrence; and (3) the management of PHI and PII is a related function that falls "within the scope of its . . . deemed status." Id.  CMC contends these facts taken together demonstrate "CMC is immune from this action under § 233(a) and substitution of the United States is proper because Plaintiff's exclusive remedy is a claim against the United States under the [FTAC]." Id. at 6-7.

The United States argues CMC's motion fails because CMC fails to identify a statute allowing this Court to mandate the Government's substitution under these circumstances.  See US Opp'n at 4.  Specifically, although it concedes § 233(a)

provides a mechanism by which deemed PHS employees can assert an immunity-defense that requires plaintiffs to pursue their claims against the United States pursuant to the FTCA, the Government asserts "nothing in the text of § 233(a) authorizes a federal court to force the United States to substitute in place of a defendant in an existing lawsuit." US Opp'n at 5. The Government argues the same is true of §§ 233(c) and (*l*)(2). Id. at 7

          a.   Section 233(a)

Section 233(a)'s statutory history evidences its inability to serve as the basis for CMC's request. Enacted in 1970, § 233 was cast in the likeness of the Federal Drivers Act of 1961 that "made an action against the United States under the FTCA the 'exclusive' remedy for 'personal injury' . . . resulting from the operation by any employee of the Government of any motor vehicle while acting with the scope of his office or employment." Levin v. United States, 568, U.S. 503, 508 n.2 (2013). If the Attorney General declined to represent a federal employee who thought a claim against him fell under the Federal Drivers Act's purview, he could either: (1) independently pursue a defense under the statute; or (2) file suit under the Administrative Procedure Act ("APA") challenging the Attorney General's refusal to defend him. See Sangemino v. Zuckerberg, 454 F. Supp. 206, 208-09 (E.D.N.Y. 1978) (stating that "the failure (or even refusal) of the Attorney General to supply an appropriate certification will not preclude a defendant driver from invoking the personal immunity of the Federal Drivers Act in defense of such an action."); see also Proietti v. Levi 530 F.2d 836 (9th Cir. 1976) (finding that "[t]he district court correctly asserted review jurisdiction

under the [APA]" regarding a federal employee's challenge to the Attorney General denial of his request under the Federal Drivers Act.)

Congress then replaced the Federal Drivers Act with the Westfall Act of 1988. The Westfall Act extends its predecessor's coverage to all federal employees and allows them to petition a court "to find and certify that the employee was acting within the scope of his office or employment" when the Attorney General determines otherwise. Pub. L. No. 100-694, § 6, 102 Stat. 4563, 4564-65 (1988), codified at 28 U.S.C. § 2679(d)(3). If the court agrees with the petitioner, it substitutes the United States as the suit's defendant. Id. Notably, Congress did not modify § 233 or the FSHCAA with similar language. This Court "presume[s] that such drafting decisions are deliberate," United States v. Alexander, 175 F.3d 1117, 1121 (9th Cir. 2013), and accordingly finds Congress did not intend for the Government's forceful substitution under § 233(a). Moreover, the Court's conclusion is supported by the fact the Westfall Act requires the United States to be served according to Rule 4 of the Federal Rules of Civil Procedure before its substitution occurs. See § 2679(d)(3). Section 233, in comparison, does not. Thus, if the court allowed CMC's § 233 interpretation to prevail, courts could force the United States' participation in lawsuits where jurisdiction over the Government is not established—an outcome that flies in the face of due process and will not be condoned by this Court

    b. Sections 233(c) and (*l*)(2)

CMC also relies on §§ 233(c) and (*l*)(2) to support its

contention that this Court should force the United States' substitution. See Mot. at 1-2. As discussed above, the former allows the Attorney General to remove a matter after he certifies the defendant is a deemed PHS employee whose actions or omissions fall within the FTCA's purview. See § 233(c). The latter, in comparison, allows a healthcare provider to unilaterally remove a case if the Attorney General fails to appear within fifteen days of receiving notice of the case. See § 233(*l*)(1)-(2). Here, neither scenario is applicable because the Attorney General: (1) did not issue such a certification; and (2) timely appeared in court. As a result, neither provision aids CMC's argument that § 233 allows this Court to force the United States' substitution in this suit.

Given district courts "are creatures of statute, and they have only so much of the judicial power of the United States as the acts of Congress have conferred upon them," Bath County v. Amy, 80 U.S. 244, 247-48 (1871), the Court agrees with the Government and finds it lacks the statutory authority to grant CMC's request. CMC's motion for substitution is accordingly denied. Furthermore, given the Court reached it decision because of the Government's opposition, it finds Plaintiff's filings regarding this matter moot and need not address them.

        2.    Plaintiff's Motion for Remand

Plaintiff urges this Court to remand this case because CMC removed this action on July 8, 2022—over seven months after Mr. Hinds filed his suit on November 11, 2021. See Pl.'s MTR at 8. As a result, Plaintiff contends CMC failed to comport with 28 U.S.C. § 1446(b), which provides:

> [t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Because CMC removed this action thirty days after receiving Mr. Hinds' initial pleading, Plaintiff argues CMC's removal is untimely and requires this action's remand to state court. Id. CMC, in response, contends its removal was timely because: (1) it removed the action within thirty days of its receipt of the CCAC; and (2) two decisions in the District of South Carolina provided CMC with a new basis to remove this action. See Def's Opp'n to Pl.'s MTR at 2-3.

The Court agrees with Plaintiff and finds CMC's removal untimely. The Court reaches this conclusion because of: (1) § 1446(b)'s plain language identifying the initial pleading as the filing initiating the thirty-day window by which an action can be removed; and (2) case law finding "the plain language of the statute requires a paper that shows a ground for removal that was previously unknowable or unavailable." Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co., 844 F.3d 1133, 1142 (9th Cir. 2017). Here, because CMC fails to cite to any allegation in the CCAC that was unavailable in Mr. Hinds' initial pleading as the basis for removal, grounds for removal were knowable or available to CMC on November 11, 2021. As a result, its opportunity to

remove this cause of action expired on December 11, 2021. Furthermore, even if the Court found CMC's argument that the District of South Carolina's decisions provided a novel removal basis, its removal would still be untimely. Those orders were published on June 2, 2022, and CMC's removal was filed July 8, 2022—thirty-six days later.

Thus, for the reasons set forth above, the Court grants Plaintiff's motion for remand. Moreover, because Plaintiff's motion is granted, the Court finds the United States' motion regarding this matter moot and does not need to directly address its arguments.

B. <u>Sanctions</u>

This Court issued its Order re Filing Requirements ("Filing Order") on July 11, 2022. ECF No. 5-2. The Filing Order limits reply memoranda to five pages. Filing Order at 1. The Filing Order also states that an attorney who exceeds the page limit must pay monetary sanctions of $50 per page. <u>Id</u>. CMC exceeded the Court's five-page limit when it replied to the Plaintiff's Opposition to CMC's motion for substitution by four pages and the United States' Opposition to CMC's motion for substitution by six pages. <u>See</u> <u>Reply to US Opp'n; Reply to Pl.'s Opp'n.</u> The Court therefore ORDERS CMC's counsel to pay $500.00 to the Clerk for the Eastern District of California no later than seven days from the date of this Order.

///
///
///
///

III. ORDER

For the reasons set forth above, the Court DENIES CMC's motion for substitution and GRANTS Plaintiff's motion for remand.

IT IS SO ORDERED.

Dated: November 30, 2022

JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE